Filed 2/26/24  P. v. Rodriguez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARLOS MICHAEL RODRIGUEZ,<br><br>    Defendant and Appellant. | G062277<br><br>(Super. Ct. No. 16CF0455)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Paige Hazard and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Carlos Michael Rodriguez served eight years in prison for assaulting a police officer with a firearm. Five months after being released from prison, Rodriguez shot a different officer in the head. Rodriguez was convicted of attempted murder, related crimes, and sentence enhancements. The trial court imposed an indeterminate term of 14 years to life for the attempted murder conviction, plus a determinate term of 41 years, four months for the related crimes and sentence enhancements.

This court affirmed the convictions; however, we remanded the matter for resentencing due to an ameliorative change in the law (the exclusion of one-year prison priors for most crimes). The trial court again imposed an indeterminate term of 14 years to life, but now imposed a lower determinate term of 32 years, four months.

In this appeal, Rodriguez claims the trial court abused its discretion by not striking certain sentence enhancements. (Pen. Code, § 1385.)[1] We hold that the court did not abuse its discretion and affirm the judgment.


I

FACTS AND PROCEDURAL BACKGROUND

In 2016, a Santa Ana police officer was on patrol in a marked police vehicle when he saw Rodriguez straddling a bike. The officer made eye contact with Rodriguez and got out of his car. Rodriguez started running. The officer ran after Rodriguez and said, "'Stop, police.'" The officer told Rodriguez he was going to catch him. Rodriguez looked back, said, "'Come and get me.'"

Rodriguez ran through an archway and into a courtyard. The officer paused at the archway and could not see Rodriguez in the courtyard. As the officer passed through the archway, he looked to his left and saw Rodriguez 10 to 12 feet away pointing a gun at him. Rodriguez fired the gun. The officer ducked and fired three times at

_____

[1] Further undesignated statutory references are to the Penal Code.

2

Rodriguez, injuring him. The officer sustained a graze wound to his head. Police searched Rodriguez and found heroin, methamphetamine, and a second handgun.

*Court Proceedings*

In 2019, a jury convicted Rodriguez of attempted murder, assault with a firearm on a peace officer, unlawful possession of a firearm by a felon, possession for sale of heroin, and possession for sale of methamphetamine. The jury also found true a personal use of a firearm allegation. Rodriguez admitted a prior strike conviction, a prior serious felony conviction, and two prison priors.

At the first sentencing hearing, the prosecutor relayed statements from the attempted murder victim. The police officer said, "He believed that he was set up for an ambush by the defendant, who was trying to kill him. [¶] When he turned the corner, the defendant was lying in wait with a gun pointed at him, which he fired. [¶] [The officer] reported being significantly impacted emotionally and also sustained minor physical injury when his head was grazed by the bullet fired by the defendant." The prosecutor said: "It was a miracle [the officer] didn't die that day."

The trial court imposed an indeterminate term of 14 years to life for the attempted murder conviction (seven years to life, doubled due to the strike). The court imposed an additional determinate term of 41 years, four months as follows:

| | |
|---|---|
| Firearm enhancement (count one) | 20 years |
| Firearm enhancement (count two) | 20 years (stayed) |
| Serious felony enhancement (2) | 10 years |
| Prison prior (2) | 2 years |
| Possession of a firearm | 16 months (mid-term x 2) |
| Possession of heroin | 8 years (upper term x 2) |
| Possession of methamphetamine | <u>6 years (upper term x 2, stayed)</u> |
| | 41 years, four months |

3

This court affirmed Rodriguez's attempted murder and related convictions, but we remanded the matter for resentencing due to an intervening ameliorative change in the law (the exclusion of one-year prison prior sentence enhancements for most crimes). (See *People v. Rodriguez* (Sept. 24, 2020, G057979) [nonpub. opn.].)

In 2023, the trial court conducted the resentencing hearing (the proceedings are covered in detail in the discussion section of this opinion). The court again imposed an indeterminate term of 14 years to life for the attempted murder conviction. But the court imposed a lower determinate term of 32 years, four months as follows:

| | |
|---|---|
| Firearm enhancement (count one) | 20 years |
| Firearm enhancement (count two) | 20 years (stayed) |
| Serious felony enhancement (1) | 5 years |
| Possession of a firearm | 16 months (mid-term x 2) |
| Possession of heroin | 6 years (mid-term x 2) |
| Possession of methamphetamine | 4 years (mid-term x 2, stayed) |
| | 32 years, four months |

Rodriguez filed an appeal. (See *People v. Arias* (2020) 52 Cal.App.5th 213, 219–221 [a newly imposed sentence following resentencing constitutes an appealable "'final judgment of conviction' under section 1237, subdivision (a)"].)

II

DISCUSSION

Rodriguez contends: "The matter should be remanded for resentencing where the trial court abused its discretion by declining to strike certain enhancements under amended section 1385, because it failed to consider the fact that defendant would remain subject to an indeterminate term even if the determinate enhancements were stricken." (Boldfacing omitted.) We disagree.

We review a trial court's declination to dismiss a sentence enhancement for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847–848.) Absent a

4

showing that the trial court was arbitrary or capricious, we presume the court """"acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."""" (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.) A trial court's discretionary sentencing decisions """"will not be reversed merely because reasonable people might disagree."""" (*Ibid*.)

In this discussion, we shall: A) state relevant principles of law; B) review the resentencing proceedings; and C) analyze the law as applied to the facts.


*A. Relevant Legal Principles*

"The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) A trial court's authority to dismiss an "action" in furtherance of justice also includes the ability to dismiss sentence enhancements. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 521–522.)

Senate Bill No. 81 (2021-2022 Reg. Sess.) added subdivision (c) to section 1385. Subdivision (c) provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).)

"In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) The statutory mitigating circumstances include but are not limited to: (1) "The current offense is connected to prior victimization or childhood

5

trauma]"; and (2) "The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(3)(E) & (H).)

The Legislature's "specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in the furtherance of justice.'" (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093, review granted Apr. 12, 2023, S278894; but see *People v. Walker* (2022) 86 Cal.App.5th 386, 398–399, review granted Mar. 22, 2023, S278309 [when the presumption favoring the dismissal of an enhancement arises, dismissal is required unless the court finds it would endanger public safety].)

If a trial court imposes a sentence without realizing the scope of its discretion (i.e., a lack of informed discretion), an appellate court usually remands the matter "'for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion."'" (*People v. Lopez* (2022) 78 Cal.App.5th 459, 467.) However, a remand for resentencing is not required "if the record demonstrates the trial court was aware of its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Remand also "is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record." (*Id.* at p. 1229; see also *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["'a trial court is presumed to have been aware of and followed the applicable law'"].)

## B. Trial Court Proceedings

After this court remanded the matter, Rodriguez and the prosecution filed briefs in the trial court prior to the resentencing hearing.

Rodriguez stated that "when a resentencing occurs, it opens the case for reconsideration of all sentencing issues." Rodriguez urged the court to dismiss the enhancements. As far as mitigating circumstances, Rodriguez argued: "There was no

6

planning, sophistication or professionalism. No minors participated or were used in the conduct and there is no great bodily injury or taking of great monetary value."

Rodriguez also stated that he "was born with controlled substances in his system. His mother was a prostitute and a drug addict. Due to this Mr. Rodriguez was raised by his grandmother who herself was physically abused by Mr. Rodriguez' grandfather, an alcoholic. His grandmother had difficulties dealing with his mental health issues (specifically oppositional defiant disorder and ADHD) and physical issues related to being struck by a stray bullet in a drive by shooting which left him with long term injuries. He was eventually placed in foster care where he lived in foster homes and residential treatment centers . . . until he reached the age of majority. Upon his reaching the age of majority [he] returned to Santa Ana where he had minimal support and fell into addiction. This addiction, inextricably linked to his experiences as a youth are clear contributing factors in the commission of his offense."

Rodriguez further argued "there is no evidence or indication that . . . dismissing enhancements would endanger public safety. There have been no subsequent threats or indication of animosity towards the victim. There is nothing to indicate that Mr. Rodriguez would be any more dangerous if his sentence were shortened as the legislature intended. To the contrary even if his sentence were to be reduced based on the change in laws he would still be subject to a life sentence and only subject to release on parole if he did not appear to pose a risk to public safety."

The prosecution urged the trial court to dismiss only the two one-year prison priors. The prosecution noted Rodriguez's criminal history, which included a 2003 conviction for auto theft (60 days in jail), a 2005 conviction for auto theft (two years in state prison), and 2009 convictions for assault with firearm on a peace officer and felony resisting arrest (eight years in state prison). The prosecution summarized the facts underlying the instant case and the 2009 convictions. In the prior assault case, Rodriguez was a passenger in a car during a routine traffic stop. As a Santa Ana officer

was conducting a patdown search of Rodriguez, he ran away. When police caught up with him, he pulled a handgun from his waistband. Rodriguez dropped his weapon only after being electrically stunned (tasered) by the police.

The prosecution argued Rodriguez "is clearly a danger to public safety." The prosecution stated: "Just years prior to this, he was convicted of assault with a semi-automatic firearm on a police officer and sentenced to eight years in prison. What is particularly troubling is that this lengthy prison sentence did not seem to have any corrective effect on the defendant. He had been out of prison for only five months before attempting to kill the officer in the instant case. It's been said that past behavior is the best predictor of future behavior, and the defendant has proven that point. The defendant has shown time and again to be a significant danger to public safety and his sentence should therefore not be reduced."

At the resentencing hearing, the prosecutor said he spoke to the victim, who wished to rely on his prior statements. Rodriguez said he wanted to apologize to the officer in person and he was "very remorseful for everything." Rodriguez's attorney argued, in part: "The People's response discusses the danger to society that the court must take into consideration. [¶] With regards to that, I think it is important for the court to remember that it is not about the danger to society right now. It is about . . . the danger that he would present to society at the time of his release." The attorney argued that a term of "14-to-life without the remaining determinate sentence that the enhancements produce would protect the community and be appropriate, according to the goals the Legislature set out in the changing of 1385 that's occurred."

The trial court gave an indicated sentence of 14 years to life, plus a determinate sentence of 32 years, four months (nine years lower than the original determinate sentence of 41 years, four months). The trial court judge stated that he believed the indicated sentence was "commensurate with [Rodriguez's] behavior in the current case combined with his record."

8

The trial court said: "As to the defense motion to strike priors and enhancements, the court intends to respectfully decline the defense's invitation to exercise its discretionary power under People vs. Romero and Penal Code section 1385(c)(1) and will thus decline to strike the priors and enhancements for purposes of sentencing for the following reasons: [¶] The nature of the current offense is a very serious felony. The current offense is a violent felony. The court finds by clear and convincing evidence that the facts and circumstances of the current offense indicate a great degree of danger to society and to public safety. There was injury to the victim, a weapon was used in the current offense." After hearing further comments from counsel, the court imposed the indicated sentence.[2]

## C. Application and Analysis

The trial court declined to strike Rodriguez's remaining enhancements (a prior strike, a five-year serious felony prior, and a 20-year firearm enhancement). The court stated its ruling was based on Rodriguez's criminal conduct: the commission of a serious and violent felony, the injury to the victim, and the use of the firearm. The court also stated that its total aggregate sentence was "commensurate with [Rodriguez's] behavior in the current case combined with his record." The court took into account the recent statutory amendment. (See § 1385, subd. (c).) That is, the court found "by clear and convincing evidence that the facts and circumstances of the current offense indicate a great degree of danger to society and to public safety."

In short, while another court may have ruled differently, the trial court considered the relevant factors when it imposed a lawful indeterminate term of 14 years to life, plus a determinate term of 32 years, four months. We do not find the court's ruling to be arbitrary or capricious. Thus, we find no abuse of the court's sentencing

---

[2] The trial court appears to have dismissed one of the two five-year serious prior felony enhancements that was imposed in the initial sentence. (See § 667, subd. (a)(1).)

discretion.  (See, e.g., *People v. Shaw* (2020) 56 Cal.App.5th 582, 588 [no abuse of discretion where the trial "court considered the relevant factors and reasonably concluded it would not be 'in furtherance of justice' to strike the five-year enhancement"].)

Rodriguez claims he "remained subject to an indeterminate life term, which meant that dismissal of the enhancements would not result in his release from custody." Rodriguez argues:  "In failing to consider Rodriguez's possible future release date, the trial court misapplied section 1385, and abused its discretion.  Accordingly, this court should vacate the sentence and remand the matter to the trial court with directions to properly exercise its discretion at a new hearing."  We disagree.

Although the trial court did not specifically mention Rodriquez's "possible future release date," that does not mean that the court failed to consider his parole eligibility date when determining he was a "danger to society and to public safety."  (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [when declining to strike a sentence enhancement, a court "'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary'"].)

In declining to dismiss the enhancements, the trial court implicitly rejected Rodriguez's argument—which he made at the hearing—that the community would be adequately protected by imposing only the indeterminate term.  Instead, the court appears to have concluded that a potential release from prison after only 14 years would still present "a great degree of danger to society and to public safety."

Rodriguez argues *People v. Williams* (2018) 19 Cal.App.5th 1057 (*Williams*) compels a different result.  We disagree.  In *Williams*, defendant was convicted of multiple crimes in multiple trials with multiple strike priors.  (*Id.* at pp. 1059–1060.)  In 2003, a trial court sentenced defendant to a term of 193 years to life. (*Id*. at p. 60.)  In 2014, when defendant was 53 years old, he petitioned for resentencing due to changes in the Three Strikes sentencing scheme.  (*Ibid*.)  The trial court concluded defendant posed an unreasonable risk to public safety and denied defendant's petition.

10

(*Id.* at p. 1061.) Defendant argued the trial court abused its discretion and the Court of Appeal agreed: "Determining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry." (*Id*. at p. 1063.)

Based on the facts of the case, the Court of Appeal reasoned: "A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her 70's. This applies with even greater force to a defendant who would still be serving a sentence greater than a human lifespan even if the petition were granted. For example, defendant's current term of 193 years to life is the equivalent of life without parole since he cannot obtain parole until far beyond a human lifespan. Taking 25 years off this term would still leave a parole date beyond any possible life expectancy. If a defendant's term is still effectively life without parole after resentencing, then resentencing cannot pose an unreasonable risk to public safety." (*Williams*, *supra*, 19 Cal.App.5th at p. 1063.)

We find the facts of the instant case to be materially distinguishable from the facts in *Williams*. Rodriguez is much younger than the *Williams* defendant, who was 53 years old when he petitioned for resentencing. Rodriguez was 30 years old when he committed the instant crimes, and 37 years old at the time of the resentencing hearing. Therefore, an indeterminate term of 14 years to life, plus a determinate term of 32 years, four months is not the equivalent of a life sentence without the possibility of parole as in *Williams*. As noted, Rodriguez argued in the trial court (as he now argues in this appeal) that the trial court should have only imposed the indeterminate term of 14 years to life. But measured from the date Rodriguez committed the instant crimes, that indeterminate term may have rendered him first eligible for parole at no later than 44 years of age.

Finally, Rodriguez argues that if the court imposed only the indeterminate sentence of 14 years to life, he "might never be released unless the Board of Parole Hearings also made its own determination in the future that he posed no threat to public safety." But under section 1385, subdivision (c), the trial court was required to make *its*

11

*own* determination as to whether Rodriguez posed a threat to public safety. We do not interpret *Williams* to mean that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings. If that were the case, then the logical extension of Rodriguez's argument would mean that any determinate term imposed by a trial court would constitute an abuse of discretion if it were imposed in addition to an indeterminate life term. We find no support for that proposition in *Williams* or in section 1385, subdivision (c).[3]

To reiterate and conclude, we hold the trial court did not abuse its discretion when imposing Rodriguez's sentence. (See *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978 ["""An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge"""].)

III

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.

---

[3] We note that: "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first . . . ." (§ 669, subd. (a).)